```
UNITED STATES DISTRICT COURT              USDC SDNY
SOUTHERN DISTRICT OF NEW YORK             DOCUMENT
------------------------------- X         ELECTRONICALLY FILED
HDTRACKS.COM, LLC,              :         DOC #: _____
                                :         DATE FILED: 02/06/2020
             Plaintiff,         :
                                :
     -against-                  :         No. 18 Civ. 5823 (JFK)
                                :             OPINION & ORDER
7DIGITAL LIMITED, a UK private  :
limited company,                :
                                :
             Defendant.         :
------------------------------- X
```

APPEARANCES

FOR PLAINTIFF HDTRACKS.COM, LLC
    Richard S. Busch
    KING & BALLOW

FOR DEFENDANT 7DIGITAL LIMITED
    William L. Charron
    Matthew S. Barkan
    PRYOR CASHMAN LLP

**JOHN F. KEENAN, United States District Judge**:

    Plaintiff HDtracks.com, LLC ("HDT") brings a motion for leave to file a third amended complaint ("TAC") following the Court's November 19, 2019 Opinion & Order ("the MTD Order") that dismissed certain claims and Defendant 7digital Group PLC ("7d Group") from this action or, in the alternative, to permit HDT to conduct limited discovery into whether the Court may exercise personal jurisdiction over 7d Group. For the reasons set forth below, HDT's motions are DENIED.

1

## I. Background

### A. Factual Background

The Court presumes familiarity with the allegations of this case as set forth in the MTD Order. See <u>HDtracks.com, LLC v. 7digital Grp. PLC</u>, No. 18 Civ. 5823 (JFK), 2019 WL 6170838 (S.D.N.Y. Nov. 19, 2019).  To briefly summarize, HDT is a New York online music store.  Former-Defendant 7d Group and its subsidiary, Current-Defendant 7digital Limited ("7d Limited"), are United Kingdom music label service providers.  HDT alleges that 7d Group and 7d Limited falsely promised to build a first-of-its-kind music streaming platform and, by failing to do so, they caused HDT to lose its dominant market position, suffer reputational harm, and lose millions of dollars in future profits.  Jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332(a).

### B. Procedural Background

On June 27, 2018, HDT initiated this action by filing a complaint only against 7d Group for breach of contract, fraudulent inducement, and unjust enrichment.  (ECF No. 1.)  On August 9, 2018, HDT filed an amended complaint that added 7d Limited as a defendant.  (ECF No. 19.)  On September 10, 2018, HDT filed a second amended complaint ("the SAC") to address issues relating to subject matter jurisdiction.  (ECF No. 26.)  On November 5, 2018, 7d Group and 7d Limited moved to dismiss

the SAC for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), and failure to state a claim pursuant to Rules 12(b)(6) and 9(b). (ECF No. 33.)

On November 19, 2019, the Court issued the MTD Order which granted in part and denied in part 7d Group and 7d Limited's motion to dismiss. (ECF No. 41.) The Court dismissed 7d Group as a defendant for lack of personal jurisdiction, dismissed HDT's breach of contract and fraudulent inducement claims because the SAC did not plausibly allege such claims, but allowed the SAC's breach of implied contract, declaratory judgment, and unjust enrichment claims to move forward against 7d Limited. See HDtracks.com, 2019 WL 6170838, at *12. The Court ruled that HDT may seek leave to amend the SAC but ordered it to demonstrate how it will cure the deficiencies in its claims by filing a proposed TAC and that justice requires granting leave to amend. See id. 7d Limited filed an answer to the SAC on December 5, 2019. (ECF No. 42.)

On December 11, 2019, HDT moved the Court by letter for leave to file a TAC and identified new allegations that, it asserts, establish 7d Group's sufficient minimum contacts with New York which would cure the personal jurisdiction pleading deficiencies the Court identified in the MTD Order. (ECF No. 43.) In the alternative, HDT requested the Court permit limited discovery into facts that would allow the Court to exercise

personal jurisdiction over 7d Group. (Id.)  7d Limited opposed the motion on behalf of its foreign corporate parent, 7d Group. (ECF No. 45.)  The Court held a conference to discuss HDT's motion on December 18, 2019, and the parties filed additional letters in support of their positions in early-January 2020. (ECF Nos. 47–50.)

**II. Analysis**

    **A. Legal Standard**

Leave to amend should be freely granted when justice so requires. Fed. R. Civ. P. 15(a)(2); Williams v. Citigroup Inc., 659 F.3d 208, 212 (2d Cir. 2011) (per curiam).  "This permissive standard is consistent with [the Second Circuit's] 'strong preference for resolving disputes on the merits.'" Williams, 659 F.3d 212–13.  "Nonetheless, the Court may deny leave if the amendment (1) has been delayed unduly, (2) is sought for dilatory purposes or is made in bad faith, (3) the opposing party would be prejudiced, or (4) would be futile." Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303 (S.D.N.Y. 1996) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)), aff'd, 116 F.3d 465 (2d Cir. 1997).  In evaluating HDT's motion to amend, the Court will "construe the pleadings and any supporting materials in the light most favorable to the plaintiffs," Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013), to determine whether the new allegations will cure the

deficiencies identified in the MTD Order, <u>Wang v. King</u>, No. 18 Civ. 8948 (JFK), 2020 WL 417690, at *3 (S.D.N.Y. Jan. 27, 2020).

To survive a motion to dismiss for lack of personal jurisdiction, "plaintiff bears the burden of showing that the court has jurisdiction over the defendant.  Prior to discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." <u>In re Magnetic Audiotape Antitrust Litig.</u>, 334 F.3d 204, 206 (2d Cir. 2003) (per curiam) (citations omitted).  A prima facie showing of jurisdiction "may be made through the plaintiff's own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant." <u>S.N. Eng. Telephone Co. v. Global NAPs, Inc.</u>, 624 F.3d 123, 138 (2d Cir. 2010) (internal quotation marks omitted). "In determining whether a plaintiff has met this burden, we will not draw argumentative inferences in the plaintiff's favor, nor must we accept as true a legal conclusion couched as a factual allegation." <u>In re Terrorist Attacks on Sept. 11, 2001</u>, 714 F.3d 659, 673 (2d Cir. 2013) (citation and internal quotation marks omitted).

### B. Personal Jurisdiction

The MTD Order ruled that the totality of the circumstances alleged by HDT formed a basis for long-arm jurisdiction over 7d Group and 7d Limited pursuant to New York's long-arm

5

jurisdiction statute because the SAC alleged that 7d Group and 7d Limited purposefully solicited and created a long-term and important business relationship with HDT in New York, they traveled to HDT's New York office on numerous occasions and routinely communicated with HDT in New York via telephone and email, and the scope of the business relationship was substantial. See HDtracks.com, 2019 WL 6170838, at *5.  Turning to the next step in the analysis—whether the Court's exercise of personal jurisdiction comports with due process—the Court ruled that personal jurisdiction over 7d Limited was appropriate, but it was not appropriate over 7d Group because "the contacts alleged by HDT between 7d Group, the forum and the litigation amount to a handful of communications and transfers of funds." Id. at *7 (quoting SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 345 (2d Cir. 2018)) (quotation marks and brackets omitted).  "This," the Court held, "is not enough." Id.

The Court considered and rejected HDT's two arguments in favor of personal jurisdiction:  First, the Court rejected HDT's assertion that personal jurisdiction over 7d Group existed because 7d Group was alleged to be the alter ego of 7d Limited. See id. at *6.  Applying the law of 7d Group's state of incorporation—i.e., English law—the Court ruled that the SAC did not allege circumstances in which an English court would pierce the corporate veil because HDT merely asserted that 7d Group and

7d Limited shared the same address, website, logo, and directors and officers, and 7d Group owned and controlled a significant portion of 7d Limited. See id. This was not sufficient to establish personal jurisdiction over 7d Group because "[t]he SAC d[id] not contain any allegations that 7d Group abuse[d] 7d Limited for the purpose of wrongdoing, or 'that impropriety was linked to the corporate structure.'" Id. (quoting FR 8 Singapore Pte. Ltd. v. Albacore Mar. Inc., 794 F. Supp. 2d 449, 460 (S.D.N.Y. 2011)).

Turning to HDT's second argument, the Court rejected its assertion that personal jurisdiction was appropriate because "7d Group operated in concert with 7d Limited." Id. at *7. This, the Court held, did not establish sufficient contacts between 7d Group, the forum, and the litigation because "[t]he SAC d[id] not plausibly allege that 7d Group was a party to the business relationship between HDT and 7d Limited that [gave] rise to 7d Limited's sufficient minimum contacts, especially where, as here, the relevant document that served to implicitly bind the parties was expressly between HDT and 7d Limited." Id. "Drawing all reasonable inferences in favor of HDT," the Court ruled, "the overwhelming inference is that the contacts relating to the litigation were performed solely by 7d Limited, HDT's only counterparty to the Term Sheet." Id.

Accordingly, the Court dismissed the SAC as to 7d Group for lack of personal jurisdiction. See id. The SAC was of course the third complaint filed by HDT in this action and the TAC would be the fourth.

**C. Leave to Amend**

"To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." In re Terrorist Attacks, 714 F.3d at 674. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." Walden v. Fiore, 571 U.S. 277, 283–84 (2014) (internal quotation marks omitted); see also SPV Osus, 882 F.3d at 344. "Specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." SPV Osus, 882 F.3d at 344 (quotation marks and brackets omitted). "A court must look to whether there was some act by which the defendant purposefully availed itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. (internal quotation marks omitted). "A defendant's general connections with the forum are not enough to support the exercise of specific

jurisdiction." Id. (internal quotation marks and brackets omitted).

The MTD Order directed HDT to "demonstrate . . . how it will cure the deficiencies in its claims <u>by filing a proposed third amended complaint</u>." HDtracks.com, 2019 WL 6170838, at *12 (emphasis added). Instead of filing a proposed TAC, however, HDT filed a letter motion which argued that the following new allegations it "would allege" in a TAC will establish personal jurisdiction over 7d Group:

(1) 7d Limited is a shell company of 7d Group;

(2) HDT met with executive officers of 7d Group in New York and always believed that it was negotiating with and dealing with 7d Group;

(3) there were extensive communications and transfers of funds between HDT and 7d Group; and

(4) 7d Group controlled the business relationship and contract between the parties, and it was the real party at issue.

7d Limited, on behalf of 7d Group, argues that HDT's proposed new allegations are merely versions of the same allegations it asserted in the SAC, which the Court already rejected as a basis for establishing personal jurisdiction over 7d Group. The Court agrees.

First, allegation #3 was considered by the Court and rejected as insufficient. See id. at *7 ("At bottom, the contacts alleged by HDT between 7d Group, the forum and the litigation amount to a handful of communications and transfers

9

of funds. This is not enough.") (citations, internal quotation marks, and brackets omitted).

Second, allegations #1, #2, and #4 essentially reassert alter ego liability, which the Court rejected as a basis for establishing personal jurisdiction because HDT does not allege that 7d Group abused 7d Limited for the purpose of wrongdoing, or that impropriety was linked to the corporate structure. See id. at *6–7. Further, even if these purportedly new allegations were not intended to support an alter ego theory of liability, as pleaded they still would only go to 7d Group's alleged liability—HDT does not explain how they establish personal jurisdiction or show how 7d Group "purposefully availed itself of the privilege of conducting activities within the forum State," SPV Osus, 882 F.3d at 344, where the relevant document that gives rise to the controversy—i.e., the Term Sheet—was only between HDT and 7d Limited. The same is true of allegations that HDT believed it was negotiating with and dealing with 7d Group because the personal jurisdiction inquiry focuses on what the defendant did and its sufficient minimum contacts—not what the plaintiff believed or understood. Finally, HDT's allegations that 7d Group executives met with it in New York and engaged in extensive communications may come close to establishing a sufficient connection between 7d Group, the forum, and the litigation, but ultimately, these connections are

not enough where the Term Sheet deliberately excluded 7d Group and declared that its terms were "non-binding" and that "[n]o agreement or obligation will arise for either party, except as set forth in a definitive written agreement executed by the parties." HDtracks.com, 2019 WL 6170838, at *2. No such written and executed agreement exists. Further, both drafts of the subsequent written agreement included identical forum-selection clauses providing England and Wales as the relevant jurisdiction, which gives rise to the strong inference, even when drawn in HDT's favor, that 7d Group did not wish to avail itself of the privilege of conducting activities within New York or to invoke the benefits and protections of New York law.

Third, HDT's argument that parent corporations may be held liable for acts by a subsidiary irrespective of any alter ego theory of liability misses the mark because the authority HDT cites deals with a parent company's contractual liability for the acts of a subsidiary—not whether personal jurisdiction is appropriate. See, e.g., Horsehead Indus., Inc. v. Metallgesellschaft AG, 239 A.D.2d 171, 171–72 (1st Dep't 1997) ("[A] parent company can be held liable as a party to its subsidiary's contract if the parent's conduct manifests an intent to be bound by the contract, which intent is inferable from the parent's participation in the negotiation of the contract, or if the subsidiary is a dummy for the parent, or if

11

the subsidiary is controlled by the parent for the parent's own purposes."); Warnaco Inc. v. VF Corp., 844 F. Supp. 940, 946 (S.D.N.Y. 1994) ("A parent corporation that negotiates a contract but has a subsidiary sign it can be held liable as a party to the contract, if the subsidiary is a dummy for the parent corporation."). Here, all of HDT's citations support an argument that suit may be brought against 7d Group in a court of competent jurisdiction if 7d Group assumed or was the actual party in interest to an express contract. Such derivative liability, however, does not establish personal jurisdiction over a nonresident defendant. Indeed, quite the opposite. See Impulse Mktg. Grp., Inc. v. Nat'l Small Bus. All., Inc., No. 05 Civ. 7776 (KMK), 2007 WL 1701813, at *6 (S.D.N.Y. June 12, 2007) (holding plaintiff plausibly alleged that defendant had assumed a contract with a forum-selection clause, and thus, personal jurisdiction pursuant to the clause was appropriate; the court, however, ordered jurisdictional discovery into plaintiff's other claims against defendant because "assumption of the Contract does not give this Court personal jurisdiction over the non-contract claims").

Further, HDT's assertions of derivative contractual liability may not even apply in this case. Here, the MTD Order ruled that the Term Sheet was not an express contract. See HDtracks.com, 2019 WL 6170838, at *9. Accordingly, HDT's claims

rely on its allegations of breach of an implied contract and unjust enrichment, which the Court ruled were plausibly pleaded as to 7d Limited. See id. at *12. Under these causes of action, 7d Limited may be liable because it was the counterparty to the Term Sheet that gives rise to the implied contract claim, and it received the payments from HDT that give rise to the unjust enrichment claim. Assuming arguendo that HDT establishes that 7d Limited is a dummy subsidiary, or that 7d Group micromanaged 7d Limited, it is not clear how HDT can next establish that 7d Group was the actual party in interest or manifested an intent to be bound by the implied contract—to say nothing of the unjust enrichment claim—where, once again, the Term Sheet was clearly between HDT and 7d Limited only, and 7d Group, if in fact they micromanaged the negotiation and performance of the Term Sheet, clearly intended for a "non-binding" arrangement and "[n]o agreement or obligation" for either party. Id. at *2. Accordingly, 7d Group's "suit-related conduct" does not appear to create the required "substantial connection with the forum State" necessary for personal jurisdiction. SPV Osus, 882 F.3d at 344 (quoting Walden, 571 U.S. at 284).

Finally, the Court notes that HDT appears to misunderstand the relevant jurisdictional inquiry. Depending on the extent of a defendant's contacts with the forum, courts require "that the in-forum conduct . . . be the proximate cause of plaintiff's

injuries . . . [or] the 'but for' cause of those injuries." SPV Osus, 882 F.3d at 344 (citing Chew v. Dietrich, 143 F.3d 24, 29 (2d Cir. 1998) (collecting and comparing cases)). "In this Circuit," the appropriate causal standard "depends on 'the relationship among the defendant, the forum, and the litigation.'" Id. "Where the defendant has had only limited contacts with the state it may be appropriate to say that he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts." Id. (quoting Chew, 143 F.3d at 29). Here, it is not clear that HDT has met its burden of plausibly alleging such proximate causation where HDT's injury was directly caused by 7d Limited's failure to deliver the streaming music platform as envisioned by the Term Sheet, and 7d Limited's receipt of $200,000 from HDT for a product it failed to build. Indeed, the SAC itself specifically alleged: "The parties contemplated and agreed that 7d Limited would develop, build, deliver, and support the streaming service in an adequate and timely manner sufficient to allow HDT to be the first high-resolution and high-quality music streaming service to market in the United States and other countries." (Second Amended Complaint, ECF No. 26, ¶ 4 (emphasis added).) This assertion is the very essence of the entire litigation—and yet it does not include 7d Group.

Accordingly, because HDT's proposed amendments to the SAC would be a futile attempt to cure its pleading deficiencies, HDT's motion for leave to file a TAC is denied.

### D. Leave to Conduct Limited Discovery

In apparent acknowledgement of its pleading deficiencies, HDT's letter motion alternatively requested leave to conduct discovery into facts that could support personal jurisdiction over 7d Group. Specifically, HDT identified the following information it would seek:

(1) 7d Group's relationship with 7d Limited;

(2) 7d Group's contacts with and commercial activities in the State of New York related to this case;

(3) whether 7d Group has a bank account, leases or occupies an office, or has a license to do business in New York;

(4) identification of all past and current members of 7d Group's executive team; and

(5) all of 7d Group's activities with respect to the transaction at issue in this case.

"[I]n deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013). Although "[a] court generally should allow a plaintiff 'an opportunity to conduct discovery on

15

. . . jurisdictional facts, at least where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party,'" Togut v. Forever 21, Inc., 285 F. Supp. 3d 643, 648 (S.D.N.Y. 2018) (ellipsis in original) (quoting Gualandi v. Adams, 385 F.3d 236, 244 (2d Cir. 2004)), "[w]here a plaintiff fails to establish a prima facie case that a court has jurisdiction over a defendant, it is within a court's discretion whether to allow jurisdictional discovery," id. (citing Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998)). "A party seeking jurisdictional discovery . . . bears the burden of showing necessity." Molchatsky v. United States, 778 F. Supp. 2d 421, 438 (S.D.N.Y. 2011), aff'd, 713 F.3d 159 (2d Cir. 2013) (per curiam).

At the December 18, 2019 conference the Court indicated that it may allow HDT to serve interrogatories on 7d Group relating to certain of its requests for information regarding 7d Group's contacts with the forum and the litigation. Upon closer inspection of the merits of HDT's motion, however, the Court finds that such discovery is not necessary or appropriate. Accordingly, HDT's request is denied.

"Discovery need not be granted to allow a plaintiff to engage in an unfounded fishing expedition for jurisdictional facts." Togut, 285 F. Supp. 3d at 648 (quoting Vista Food Exch., Inc. v. Champion Foodservice, LLC, 124 F. Supp. 3d 301, 315

(S.D.N.Y. 2015)). As discussed above, HDT has failed to establish a prima facie case of personal jurisdiction over 7d Group. Accordingly, the Court has discretion to allow discovery into such facts if it is necessary or if the relevant facts lie exclusively within the defendant's knowledge. See id.; see also Gualandi, 385 F.3d at 244. Here, the information HDT anticipates in topics #1, #2, #4, and #5 above is information it already has, was in a position to allege without discovery, already asserted via the SAC and by affidavit, and which the Court already considered and rejected as providing a sufficient basis for establishing 7d Group's sufficient minimum contacts with New York and the litigation. See HDtracks.com, 2019 WL 6170838, at *5, *7. "The request, in other words, is to delve further into the alter-ego theory that the Court rejected in [the MTD Order] and rejects again today, or into the merits themselves." Vista Food Exch., 124 F. Supp. 3d at 313. Topic #3 is not permitted as a general matter because it calls for information relevant to whether general jurisdiction exists—HDT, however, has never attempted to make out a case for such jurisdiction over 7d Group and, indeed, it cannot. See Johnson v. UBS AG, No. 18-2906, 2019 WL 5802323, at *2 (2d Cir. Nov. 7, 2019) (summary order) ("Aside from the truly exceptional case, a corporation is at home and subject to general jurisdiction only

17

in its place of incorporation or principal place of business.") (quotation marks omitted).

Accordingly, because HDT has failed to establish that jurisdictional discovery is necessary, its motion for leave to conduct such discovery is denied. Cf. Jazini, 148 F.3d at 186 ("We recognize that without discovery it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York.  That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States—as it properly may do.  The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.").

### III.  Conclusion

For the reasons set forth above, HDT's motions for leave to file a TAC or, alternatively, to conduct limited discovery are DENIED.  7d Limited has already filed its answer and thus this case will proceed to discovery before Magistrate Judge Parker.  The parties are directed to confer and file a joint-proposed

in its place of incorporation or principal place of business.") (quotation marks omitted).

Accordingly, because HDT has failed to establish that jurisdictional discovery is necessary, its motion for leave to conduct such discovery is denied. Cf. Jazini, 148 F.3d at 186 ("We recognize that without discovery it may be extremely difficult for plaintiffs . . . to make a prima facie showing of jurisdiction over a foreign corporation that they seek to sue in the federal courts in New York.  That, however, is the consequence of the problems inherent in attempting to sue a foreign corporation that has carefully structured its business so as to separate itself from the operation of its wholly-owned subsidiaries in the United States—as it properly may do.  The rules governing establishment of jurisdiction over such a foreign corporation are clear and settled, and it would be inappropriate for us to deviate from them or to create an exception to them because of the problems plaintiffs may have in meeting their somewhat strict standards.").

### III.  Conclusion

For the reasons set forth above, HDT's motions for leave to file a TAC or, alternatively, to conduct limited discovery are DENIED.  7d Limited has already filed its answer and thus this case will proceed to discovery before Magistrate Judge Parker.  The parties are directed to confer and file a joint-proposed

case management order within 30 days of the date of this Opinion & Order.

The Clerk of Court is directed to terminate the motion docketed at ECF No. 43.

**SO ORDERED.**

Dated: New York, New York
February 6, 2020

John F. Keenan
United States District Judge